**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

SHANTA MERRELL, individually and on behalf of all others similarly situated, MELISSA RANSOM, individually and on behalf of all others similarly situated, and ALL JAKD UP MOTORSPORTS, INC.,

    Plaintiffs,

v.

VYSTAR CREDIT UNION,

    Defendant.

Case No. 3:23-cv-461-TJC-PDB

# O R D E R

Plaintiffs Shanta Merrell, Melissa Ransom, and All Jakd Up Motorsports, Inc. ("AJUM") filed a class action complaint against Defendant VyStar Credit Union regarding its overdraft fee policy on debit card transactions. (Doc. 1). This case is before the Court on motions regarding the validity and enforcement of an arbitration provision. VyStar filed a Motion to Compel Arbitration (Doc. 31) and, as an alternative, a Motion to Dismiss (Doc. 32). Plaintiffs filed responses to the Motions (Docs. 48 and 49), to which VyStar replied (Docs. 58 and 59). The Court has carefully reviewed the Motions, all opposing and supporting submissions, the record in this case, and the applicable law.

## I. BACKGROUND

In July 2021, VyStar amended the terms of its consumer and business Membership Agreements[1] to add an arbitration provision that that covers "all disputes arising out of, affecting, or relating to" the Membership Agreements and/or Plaintiffs' relationship with VyStar. (Doc. 31 at 2). VyStar claims that Plaintiffs each received multiple notices of the arbitration provision and the option to opt out of arbitration. Id. As Plaintiffs did not opt out and continued to use their accounts, VyStar contends they must be compelled to individually arbitrate their claims under the Federal Arbitration Act (FAA) and Florida law.[2] Id.

Plaintiffs counter that VyStar failed to prove the Plaintiffs agreed to arbitration — — that VyStar allegedly buried a new arbitration provision "behind pages of account statements in an online portal with no warning whatsoever to Plaintiffs that new terms were offered[.]" (Doc. 49 at 1) (emphasis

---

[1] Plaintiffs group together the Membership Agreement (Doc. 1-1) and two overdraft fee policies (Docs. 1-2, 1-3) as an "adhesion contract." Doc. 1 ¶ 2. AJUM opened a business account with VyStar and thus was subject to a Business Membership Agreement rather than the Membership Agreement that Ransom and Merrell are subject to. (Doc. 31 at 3) The relevant provisions, however, are materially similar. (Compare Doc. 1-1, with Doc. 31-1 at 18–24). Florida law is the governing law of the Membership Agreements. (Doc. 1-1 at 13; Doc. 31-1 at 18).

[2] Alternatively, VyStar asserts Plaintiffs claims should be dismissed entirely. (Doc. 31 at 18, 19).

2

omitted). Plaintiffs contend that "VyStar had no contractual right to unilaterally add wholly new terms, and VyStar has not shown that it gave reasonable notice of an offer to enter into an arbitration agreement or that Plaintiffs' silence and inaction constituted acceptance." Id.

The Membership Agreements state VyStar may periodically change its terms and that Vystar will send notices of any such changes as required by law. (Doc. 1-1 at 11; Doc. 31-1 at 20). While the parties dispute whether the Plaintiffs agreed to the arbitration provision (to be discussed further below), the notice and the language of the arbitration provision states:

**IMPORTANT CHANGE IN TERMS**

**Please Read This Notice Carefully**

> This notice advises you of changes to your VyStar Membership Agreement and Disclosures Booklet. The following ***Arbitration and Class Action Waiver*** is added as section 36 to the Membership and Account Agreement section of the Membership Booklet. You can opt out of the Arbitration Provision as provided below and you will not lose any of the rights and benefits of your accounts.
>
> **36. ARBITRATION AND WAIVER OF CLASS ACTION**
>
> You and VyStar agree that we shall attempt to informally settle any and all disputes arising out of, affecting, or relating [to] this Membership Booklet, any loans or other agreements between you and the Credit Union, and any other products or services the Credit Union has provided, will provide or has offered to provide to you, and/or any aspect of your relationship with the Credit Union (hereafter referred to as the "Claims"). If that cannot be done, then you agree that any and all Claims that are made, filed or initiated after the Effective Date (defined below) of this Arbitration and

> Waiver of Class Action provision ("Arbitration Provision"), even if the Claims arise out of, affect or relate to conduct that occurred prior to the Effective Date, shall . . . be resolved by binding arbitration . . . whether such Claims are in contract, tort, statute, or otherwise.
> . . .
> b. Effective Date. This Arbitration Provision is effective July 1, 2021, unless you opt-out in accordance with the requirements of the RIGHT TO OPT OUT provision below. If you receive your statements by mail, then the Arbitration Provision was provided to you when it was mailed. If you receive your statements electronically, then it was provided to you when you were sent notice electronically.
> . . .
> Any determination as to whether this Arbitration Provision is valid or enforceable in part or in its entirety will be made solely by the arbitrator, including without limitation any issues relating to whether a Claim is subject to arbitration[.]
> . . .
> f. Right to Opt-Out. You have the right to opt-out of this Arbitration Provision and it will not affect any other terms and conditions of your relationship with VyStar. To opt out, you must notify us in writing of your intent to do so before the Effective Date. Your opt-out will not be effective and you will be deemed to have consented and agreed to the Arbitration Provision unless your notice of intent to opt out is received by us in writing by U.S. mail at:
>
>> VyStar Credit Union
>> Attn: Legal/Opt-Out
>> 76 South Laura St.
>> Jacksonville, FL 32202
>> Or by email at Opt-Out@VyStarcu.org
>
> Your notice of intent to opt out can be a letter that is signed by you or an email sent by you that states "I elect to opt out of the Arbitration Provision" or any words to that effect.

(Doc. 31-1 at 26–27).

4

## II. DISCUSSION

Under the FAA, a written agreement to arbitrate is "valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Congress expressly assigned the duty of deciding issues concerning the "making of the arbitration agreement" to the court. Id. § 4; see also Granite Rock Co. v. Int'l Brotherhood of Teamsters, 561 U.S. 287, 296 (2010) ("[W]here the dispute at issues concerns contract formation, the dispute is generally for courts to decide."). The threshold question of whether an arbitration agreement exists is "simply a matter of contract." Bazemore v. Jefferson Cap. Sys., LLC, 827 F.3d 1325, 1329 (11th Cir. 2016) (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995)). Under Florida law,[3] the party seeking to enforce a contract bears the burden to prove the formation of the contract by a preponderance of the evidence. Dunn v. Glob. Tr. Mgmt., LLC, 506 F. Supp. 3d 1214, 1231–32 (M.D. Fla. 2020) (citing Knowles v. C.I.T. Corp., 346 So. 2d 1042, 1043 (Fla. 1st DCA 1977).

When determining whether the parties entered into an arbitration agreement, the Court applies a "summary judgment-like standard" and may conclude "as a matter of law that parties did or did not enter into an arbitration

---

[3] The parties appear to agree that Florida contract law applies to the issue of contract formation. (Doc. 31 at 13; Doc. 49 at 5, 7).

agreement only if 'there is no genuine dispute as to any material fact' concerning the formation of such an agreement." Bazemore, 827 F.3d at 1333 (11th Cir. 2016) (quoting Fed. R. Civ. P. 56(a)). Plaintiffs may raise a genuine issue of fact regarding whether they agreed to arbitrate. See In re T & B Gen. Contracting, Inc., 833 F.2d 1455, 1459 (11th Cir. 1987) ("A binding and enforceable contract requires mutual assent to certain and definite contractual terms. Without a meeting of the minds on all essential terms, no enforceable contract arises."); Turner v. U-Haul Co. of Fla. 905, LLC, No. 6:08-CV-118-JA-DAB, 2008 WL 709107, at *3 (M.D. Fla. Mar. 14, 2008) ("While that acceptance may be manifested in many ways, an agreement requires, at the very least, notice and assent (either express or implied) to certain stated terms."); All S. Subcontractors, Inc. v. Amerigas Propane, Inc., 206 So. 3d 77, 81 (Fla. 1st DCA 2016) ("[N]o party may be forced to submit a dispute to arbitration that the party did not intend and agree to arbitrate.") (internal quotation marks and quoted authority omitted).

According to VyStar, the amended terms and conditions to the Membership Agreements containing the arbitration provision were reflected in a change in terms notice, which was attached to Plaintiffs' May 2021 and June 2021 statements. (Doc. 31-1 at 4−5). VyStar has provided the May 2021 and June 2021 statements. (Doc. 31-1 at 33–124). VyStar's records show that Plaintiffs elected to receive statements and notices electronically, and VyStar

sent the Plaintiffs an email informing them that their May 2021 and June 2021 statements, which included the notice of the arbitration provision attached behind the statements, were available to view online. Id. at 4–5.

Plaintiffs, however, respond that VyStar has not proven Plaintiffs agreed to arbitration. (Doc. 49 at 5). Through declarations, Plaintiffs state they cannot find the May and June 2021 emails (and according to Plaintiffs' counsel, neither can VyStar),[4] and other emails notifying them that their statements are available just sends them to a link. (See Doc. 50 at 1–2 (Merrell's declaration); Doc. 51 at 1–2 (Ransom's declaration); Doc. 57 at 1–2 (Craig Sutton Jr.'s declaration on behalf of AJUM as its president)). The template emails provided by Plaintiffs state "Your VyStar Credit Union account statement is available for you to view online," and provide a link to VyStar's website to view or print the statement. (Doc. 50 at 4; Doc. 51 at 4; Doc. 57 at 4). These template emails, attached as Exhibit 1 in Plaintiffs' declarations, contain no reference to the arbitration provision. Id.

When a party moves to compel arbitration;

---

[4] See Doc. 49 at 3. Lisa La Fornara's declaration includes correspondence between the parties' counsel. (Doc. 52-1). Plaintiffs' attorney requested copies of the emails or template referenced in Doc. 31-1 (Stephanie Curtis's Declaration for VyStar's Motion to Compel Arbitration). (Doc. 52-1 at 2–3). Defendants' counsel replies ". . . Pulling the exact template from the time of the arbitration agreement is challenging because the email predate a conversion in online banking platforms. Your clients should have plenty of prior email exemplars." Id. at 1.

7

> If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, . . . the court shall hear and determine such issue.

9 U.S.C. § 4.

Here, the Court is unable to conclude whether the parties entered into an arbitration agreement. Cf. Larsen v. Citibank FSB, 871 F.3d 1295, 1308 (11th Cir. 2017) ("When there is no such dispute, a trial is unnecessary."). There is a genuine dispute of whether Plaintiffs received the arbitration provision, and whether the method that VyStar used to distribute the arbitration provision – through a routine email without any reference to the arbitration provision – was sufficient to prove Plaintiffs agreed to arbitrate. Accordingly, the case will proceed to trial to determine whether Plaintiffs entered into an agreement to arbitrate. See Burch v. P.J. Cheese, Inc., 861 F.3d 1338, 1346–50 (11th Cir. 2017); Magnolia Cap. Advisors, Inc. v. Bear Stearns & Co., 272 F. App'x 782, 786 (11th Cir. 2008) (reversing the district court's orders to dismiss the action and order arbitration and remanding the case for a trial as to the making of an arbitration agreement); Hicks v. Comcast Cable Commc'ns, LLC, No. 0:18-CV-61384, 2019 WL 5208849, at *4 (S.D. Fla. Dec. 12, 2018) (ordering a bench trial be held where there was a genuine issue of fact regarding whether an agreement to arbitrate existed).

Under 9 U.S.C. § 4, if Plaintiffs wanted a jury trial on this issue, they would have had to request one. See Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd., 944 F.3d 225, 242 (4th Cir. 2019) (citing Burch, 861 F.3d at 1349 (11th Cir. 2017)) ("Section 4 authorizes 'the party alleged to be in default' — that is, the party that failed to comply with an arbitration agreement — to request a jury trial 'on or before the return day of the notice of application.'"). As Plaintiffs, the party in "default" in this case, did not request a jury trial, the Court will conduct a bench trial to determine whether Plaintiffs agreed to arbitrate. Boykin v. Fam. Dollar Stores of Mich., LLC, 3 F.4th 832, 835 (6th Cir. 2021); Bell v. Royal Seas Cruises, Inc., No. 0:19-CV-60752, 2020 WL 5742189, at *8 (S.D. Fla. May 13, 2020), report and recommendation adopted, No. 0:19-CV-60752, 2020 WL 5639947 (S.D. Fla. Sept. 21, 2020).

Accordingly, it is hereby

**ORDERED:**

1. Defendant VyStar Credit Union's Motion to Compel Arbitration (Doc. 31) is **DENIED without prejudice**.

2. Defendant VyStar Credit Union's Motion to Dismiss (Doc. 32) is **DENIED without prejudice.**

3. A bench trial will be held pursuant to 9 U.S.C. § 4 to determine whether a binding arbitration agreement exists. A telephone status conference is set for **April 15 at 3:00 p.m.** to set the trial. The conference line will be

9

activated at 2:50 p.m. so that all counsel can dial in and give their appearances. To participate in the call, the parties are directed to call the reserved conference line toll free at **1-888-684-8852**. The access code for all participants is **2594705** and the participant security code is **323461**.[5]

**DONE AND ORDERED** in Jacksonville, Florida, the 27th day of March, 2024.



TIMOTHY J. CORRIGAN
United States District Judge

jcd
Copies:

Counsel of record

---

[5] To reduce background audio interference, the parties should not use the speaker function during the call and are encouraged to use landlines if possible. <u>Parties must put their phones on mute when not speaking.</u>  Additionally, each party must identify themselves when speaking so the court reporter can accurately report the proceedings.